## BRUMBY *v.* CITY OF MARIETTA *et al.* (Two Cases.)

1. Where two elections were held in the City of Marietta for the purpose of determining whether issues of bonds should be authorized, and no complaint was made of lack of authority to hold the elections or of want of any of the prerequisites for so doing, but it was contended that certain provisions of the charter of the city were violated, which prohibited persons other than the voters or managers, from being allowed to be within 50 feet of the polling place, and prohibited electioneering or seeking to influence voters, or following or accompanying them for the purpose of influencing them, or seeing how they should vote, or seeing that they should vote in any particular way, and declared that a violation of such provisions should be a misdemeanor: *Held*, that these provisions of the municipal charter were directory in their nature, and a violation of them by some persons and a failure to enforce them by the election managers did not operate to invalidate the entire election, it not appearing that the result would have been otherwise had there been a compliance with such provisions.

2. If there was some irregularity in the manner of registering a few voters, but it did not appear that such persons voted in the election, or that they were in fact not qualified to register, or that such irregularity affected the result, this furnished no cause for declaring the election void, and refusing to validate bonds authorized thereby.

3. The rulings announced in the preceding headnotes apply to and govern both cases.

Argued February 15,. Decided April 14, 1909.

Validation of bonds. Before Judge Gober. Cobb superior court. December 12, 1908.

*D. W. Blair,* for plaintiff in error. *B. F. Simpson, solicitor-general, E. H. Clay, J. Z. Foster,* and *G. F. Gober,* contra.

ATKINSON, J. On August 18, 1905, an act of the legislature was approved, to authorize the mayor and council of Marietta to order and have held an election to determine whether or not bonds should be issued for the purpose of establishing and maintaining a system of sewerage. Acts 1905, p. 983. On August 20, 1906, a separate act was approved, authorizing an election to be held to determine whether bonds should be issued for the establishing and maintaining of a system of waterworks. Acts 1906, p. 846. In pursuance

of these acts both elections were held on November 16, 1908, being conducted by separate managers and with separate boxes, though in the same room. The vote was canvassed and declared by ordinance to have been carried in each case, in favor of the issuance of bonds, by two thirds of the qualified voters of the city. Notice was given to the solicitor-general, and he instituted proceedings in each case to validate the bonds under the act of 1897 (Acts 1897, p. 82; Van Epps' Supp. Code, §§ 6074-81). The city answered, admitting the allegations of the petition filed, and alleging that the necessary steps had been taken to make the issue of bonds legal in each case. T. M. Brumby intervened and objected to the validation of each proposed issue of bonds. On the hearing evidence was introduced, and the presiding judge entered a judgment of validation in each case. The intervenor excepted. The two cases were argued together in this court, as they involved the same questions.

There is no doubt that in order for a municipal corporation to be authorized to issue bonds there must be a compliance with the essential provisions of the law. Without this there is no legal authorization. But there is a distinction between the mandatory provisions of the law, without a compliance with which no legal election can be held, and directory provisions in regard to the manner of conducting an election which is legally held, or in regard to the conduct of persons thereat. If an election is held without authority of law, or if prerequisites to the valid holding thereof are not complied with, it is void, and can confer no authority. But if there is lawful authority for the election and the prerequisites to its being held have been complied with, and it is held at the proper time and place by persons qualified to hold it, mere irregularities in the manner in which it is conducted will not render the election void, or defeat it, if it is not shown that by that non-compliance the result is different from what it would have been had there been proper compliance with the law. Political Code, § 112; *Coleman* v. *Board of Education,* 131 *Ga.* 643 (63 S. E. 41). The Political Code, § 378, provides that such an election "shall be held by the same persons, and in the same manner, under same rules and regulations that elections for officers of said county, municipality, or division are held." The act of August 15, 1904 (Acts 1904, p. 519), establishing a new charter for the City of

Marietta, provided that no persons, except voters approaching the polls for the purpose of voting, election managers and clerks, and county or muncipal officers called in to preserve order, or persons passing along the highway on business, should be permitted to be within 50 feet of any polling-place. It was also declared to be unlawful for any person to electioneer or in any way influence or try to influence any voter, or to speak to him on the subject of voting within 50 feet of the voting place, except that managers in discharge of their duty might speak to a voter, provided they did not electioneer or seek to influence him; and it was made unlawful for any person to lead or carry a voter to the polls, or to accompany or follow him, either to influence his vote or to see how he voted or to see that he voted in any particular way; and it was declared that any person who should in any manner violate any of these provisions should be guilty of a misdemeanor, and upon conviction should be punished as prescribed in section 1039 of the Penal Code. Evidence was introduced to show that these provisions of the charter of Marietta were disregarded and violated by partisans on both sides of the contest; that the election was held in the council chamber, which was located in the court-house, and that persons who favored one bond issue or the other, or who were opposed to both, acted in disregard of the statute referred to. Some evidence was also introduced tending to show that on some occasions, while the clerk of council, who was the regular registrar, was absent, some voters came into the office and were allowed by the city marshal to register. Only one name was mentioned as probably having thus registered, but there was some evidence indicating that a few additional persons had done the same thing, and also that on one occasion the marshal had gone to the store of a resident and permitted him to register there. It was not shown whether the person last mentioned favored the bond issues or not, or whether he voted in the election. It appeared that the other person named favored one of the issues and opposed the other, but it did not appear that he voted, though it was stated that he was present at the court-house taking an interest in how others voted. If there were others whose registration was irregular, it did not appear that they voted or that they were disqualified from registering.

The intervenor did not allege the absence of any of the prerequisites for the holding of the elections, but contended only that

matters of the character above indicated rendered the elections: void. Applying the rule which has been above stated, this contention can not be sustained. If it were conceded that persons desirous of having the issues of bonds authorized or opposing such issues acted in violation of the provisions of the charter of the City of Marietta, and made themselves subject to prosecution for a misdemeanor, that alone would not render the election void. The act provides punishment for disobedience of its provisions, but does not provide that the entire election shall be nullified thereby; nor would this follow, at least unless it were shown that the result would have been otherwise save for such conduct. If it were held that a violation of the charter provisions by any person would of itself invalidate the entire election, this would put it in the power of any person who was opposed to the issuing of bonds to defeat the will of the qualified voters, lawfully expressed, by himself merely disobeying the law. Even a failure on the part of the managers to protest against such conduct, or to call upon proper authorities to suppress it, would not suffice to overturn the entire election, and defeat the will of the qualified voters, where it did not appear that the result would have been otherwise had the directions of the statute been properly observed. See *Cole* v. *McClendon,* 109· *Ga.* 183 (34 S. E. 384) ; *Chamlee* v. *Davis,* 115 *Ga.* 266 (41 S. E. 691) ; *Jossey* v. *Speer,* 107 *Ga.* 828 (33 S. E. 718). The matters of which complaint was made were violations of directory provisions of the charter, but were not so mandatory or essential as ipso facto to render the election a nullity; and it is not shown that any harm was done or that the result would have been different had the directions contained in the charter been observed.

It was contended in the argument before this court, that inasmuch as section 378 of the Political Code provided that elections must be held "under the same rules and regulations" as were provided by law for the holding of elections for officers of the municipality, and section 379 only authorized the validation of bonds when the provisions of section 378 had been complied with, this would require strict observance of the provisions of the charter of the City of Marietta regarding elections hereinbefore recited, before the court would be authorized to validate the bonds. We think the reasoning already stated is a sufficient reply to this contention. The statute contemplates that an election for the issuance

of bonds should be valid if held in such manner as that it would be valid if it were being held for municipal officers. Whatever be the law requiring strict conformity with mandatory rules governing elections for the issuance of bonds, there is no reason why a bond election should be invalid on account of a disregard of merely directory provisions of election laws, where such would not render an election for municipal officers invalid. The ruling here made does not conflict with the ruling with regard to "strict construction," as made in *Bowen* v. *Greenesboro*, 79 *Ga.* 709 (4 S. E. 159), *Mayor of Athens* v. *Hemerick*, 89 *Ga.* 674 (16 S. E. 72), *City of Dawson* v. *Waterworks Co.*, 106 *Ga.* 732 (32 S. E. 907), *Davis* v. *Dougherty County*, 116 *Ga.* 491 (42 S. E. 764); *City of Thomasville* v. *Thomasville Light Co.*, 122 *Ga.* 401 (50 S. E. 169), and other similar cases, which did not involve a failure to observe merely directory provisions of the law.

             *Judgment affirmed. All the Justices concur.*